6-96-028-CV Long Trusts v. Dowd 










Â 








In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00007-CV
______________________________



IN RE:
LAWRENCE REGINALD BELL




Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Original Mandamus Proceeding





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Lawrence Reginald Bell seeks a writ of mandamus directing the trial court to rule on his
motion to compel the court reporter to prepare and provide Bell with a free copy of the reporter's
record in his criminal trial. Based on the record and pleadings before us, and without hearing oral
argument, we deny the petition for writ of mandamus.
Â Â Â Â Â Â Â Â Â Â Â Â According to his petition for writ of mandamus, Bell asked the trial court to compel the court
reporter to prepare a full statement of facts in cause number 00-15721, without charge due to Bell's
indigency.


 On or about November 9, 2003, Bell asked the trial court to rule on his motion to
compel. On or about December 10, 2003, Bell again requested the trial court to enter a ruling on his
earlier motion to compel and to inform him of the court's ruling. By January 12, 2004, Bell had
received no response from the trial court. 
When Mandamus Relief Is Available
Â Â Â Â Â Â Â Â Â Â Â Â Mandamus will issue only when the record establishes (1) a clear abuse of discretion or the
violation of a duty imposed by law and (2) the absence of a clear and adequate remedy at law. Cantu
v. Longoria, 878 S.W.2d 131 (Tex. 1994); Walker v. Packer, 827 S.W.2d 833, 839â40 (Tex. 1992). 
Mandamus is an extraordinary remedy that will issue only if the trial court clearly abuses its
discretion or, in the absence of another statutory remedy, fails to observe a mandatory provision
conferring a right or forbidding a particular action. Abor v. Black, 695 S.W.2d 564, 567 (Tex. 1985)
(orig. proceeding). 
Â Â Â Â Â Â Â Â Â Â Â Â Mandamus may issue even on questions of first impression if, as a matter of law, the trial
court erred in its analysis and reached an erroneous legal conclusion. Huie v. DeShazo, 922 S.W.2d
920 (Tex. 1995) (orig. proceeding).
Ruling on Motions
Â Â Â Â Â Â Â Â Â Â Â Â A trial court is required to consider and rule on a motion within a reasonable time. Barnes
v. State, 832 S.W.2d 424, 426 (Tex. App.âHouston [1st Dist.] 1992, orig. proceeding); Kissam v.
Williamson, 545 S.W.2d 265, 266â67 (Tex. Civ. App.âTyler 1976, orig. proceeding). When a
motion is properly filed and pending before a trial court, considering and ruling on that motion is a
ministerial act, and mandamus may issue to compel the trial court to act. Safety-Kleen Corp. v.
Garcia, 945 S.W.2d 268, 269 (Tex. App.âSan Antonio 1997, orig. proceeding); see also Eli Lilly
& Co. v. Marshall, 829 S.W.2d 157, 158 (Tex. 1992) (holding trial court abused its discretion by
refusing to conduct hearing and render decision on motion); Chiles v. Schuble, 788 S.W.2d 205, 207
(Tex. App.âHouston [14th Dist.] 1990, orig. proceeding) (finding mandamus appropriate to require
trial court to hold hearing and exercise discretion). While we have jurisdiction to direct the trial
court to make a decision, we may not tell the court what that decision should be. O'Donniley v.
Golden, 860 S.W.2d 267, 269â70 (Tex. App.âTyler 1993, orig. proceeding).
Â 
Bell's Application Is Moot
Â Â Â Â Â Â Â Â Â Â Â Â In the case now before us, Bell asks us to order the trial court to rule on his motion to compel
the court reporter to provide Bell with a free transcript of the hearing(s) in trial court cause number
00-15721. The trial court has informed this Court that the court reporter has located and furnished
a copy of the hearing transcript to Bell. Based on this information, the objective sought by Bell
through petition for writ of mandamus from this Court has already been achieved. We deny Bell's
petition as moot.
Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â February 9, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â February 10, 2004




eWhenUsed="false" Name="Light Grid Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-09-00101-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  CARL LEONARD LIVELY,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 402nd
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Wood County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. 20,292-2008

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  A small
fender bender in a Wal-Mart parking lot led to the fortuitous discovery of
evidence connecting Carl Leonard Lively to a gas station armed robbery.Â  He was convicted of aggravated robbery by a
jury, sentenced by the trial judge to forty yearsÂ imprisonment, and was
ordered to pay a $10,000.00 fine.Â  Lively
appeals the judgment of the trial court on grounds that the evidence was
insufficient to support his conviction, his counsel rendered ineffective
assistance, and the trial court erred in denying his motion to suppress.Â  He also argues that the trial court abused
its discretion in overruling Rule 404(b) objections to testimony and evidence
obtained from his vehicle after the accident.Â 
We affirm the trial courtÂs judgment. 

I.Â  Â Â Â Â Â  Factual
and Procedural History 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Barbara
Ann Bryant worked as a clerk for J&J Fastop located in an Exxon gas station
in Hawkins, Texas.Â  There were no
customers in the store around 8:28 p.m. when she Âsaw a dark-colored SUV pull
up.ÂÂ  Â[A] white man came in with a
camouflage hat and a bandana . . . covering up his nose.ÂÂ  The tall, slender man was in his late forties
or early fifties, had uneven ears, with one sitting higher than the other,
Âsalt-and-peppered colored hair, and bushy eyebrows of the same color.ÂÂ  He was wearing sunglasses, blue jeans, dark
work-style boots, and a black belt with a rectangular metal buckle.Â  The man wielded a gun in BryantÂs direction
and commanded her to Â[o]pen the drawer and give me your money.ÂÂ  A shocked Bryant frantically placed the money
from the cash register on the counter.Â 
She complied with the robberÂs requests to retrieve more money from
underneath the counter and stuff all the cash in a bag.Â  While grabbing the money and pointing the gun
at Bryant, he said, ÂGo to the back of the store and donÂt look back.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  Bryant ran
to the back of the J&J Fastop and called the police as soon as she was sure
the robber had left.Â  Officer A. J.
Randell and Officer Eileen Standfield arrived to find Bryant in a hysterical,
hypoglycemic state.Â  Bryant calmed down
after drinking a soft drink and told the officers the man was in a dark-colored
blue or black Chevy Tahoe.[1]Â  The gas station was monitored by several
surveillance cameras placed at different angles both inside and outside the
J&J Fastop.Â  Review of the video
recordings confirmed the description given by Bryant.Â  The only car seen arriving and leaving the
Exxon parking lot immediately before and after the robbery was a dark blue
Chevy Tahoe with a luggage rack, trailer hitch, bug shield, and brake light at
the top back of the vehicle.Â  Randell
took pictures from the surveillance cameras to a local mechanic who identified
the vehicle as a 2002 model.Â  The
officers issued a broadcast advising fellow law enforcement to be on the
lookout for a 2002 or newer model Suburban driven by a white male in his late
forties with gray hair.Â  The broadcast
described the man as five foot and ten or eleven inches tall weighing
approximately 190 to 200 pounds.Â 
Unfortunately, the robber absconded and three months passed without
leads on a suspect.Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Fortuitously, Sergeant Damon
Boswell experienced a breakthrough on the case while monitoring the handicapped
zones in a Wal-Mart parking lot in Gun Barrel City.Â  He heard the crash of a minor collision
between a small white vehicle and dark blue 2002 Tahoe with a luggage rack,
trailer hitch, bug shield, and brake light at the top back of the vehicle.Â  Lively, who was driving the Tahoe, Âwas
outside of the vehicle and shaking, visibly nervous.ÂÂ  Boswell radioed the Tahoe license plate to
dispatch and asked for LivelyÂs driverÂs license.Â  The license plate did not match the Tahoe and
LivelyÂs driverÂs license was expired.Â 
Boswell received reports that a blue Tahoe had been involved in a
robbery.Â  He noted that the Tahoe Âhad
Scotch tape on the outside of the windshield over the registration certificate
where the license number is and VIN number.ÂÂ 
Boswell knew Scotch tape is used to blur numbers so they cannot be
captured by surveillance cameras.Â  He
asked for consent to search the Tahoe.Â 
Lively asked why Boswell wanted to search, and Boswell stated it was due
to the way Lively was acting.Â  Lively
then responded, Â[W]ell, if you feel like looking in there, look in
there.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  Boswell
found a loaded and chambered gun in the Tahoe, along with bandanas, four or
five license plates, and hats, including a camouflage hat.Â  He took pictures of the evidentiary items and
of Lively, who was wearing blue jeans, sunglasses, dark work-style boots, and a
belt with a rectangular metal buckle.Â  He
radioed the license plate to dispatch again.Â 
This time, the license plate matched the Tahoe and confirmed BoswellÂs
suspicions that Lively switched the license plates while Boswell was speaking
with the owners of the other car involved in the accident.Â  Lively was arrested for his expired driverÂs
license. 

Â Â Â Â Â Â Â Â Â Â Â  Randell
travelled to Gun Barrel City, saw that the evidence from the Wal-Mart stop
matched the description of the gun, person, and vehicle involved in the J&J
Fastop robbery, and obtained a warrant for LivelyÂs arrest.Â Â Â  

Â 

II. Â Â Â Â Â  The Evidence Was Legally and Factually
Sufficient 

Â 

Â Â Â Â Â Â Â Â Â Â Â  A. Â Â Â Â Â  Standard
of Review

Â 

Â Â Â Â Â Â Â Â Â Â Â  We review
the legal and factual sufficiency of the evidence supporting a conviction under
well-established standards.Â  In
conducting a legal sufficiency review, we consider the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.Â  Laster v. State, 275 S.W.3d
512, 517 (Tex. Crim. App. 2009). Â We must give deference to Âthe responsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate
facts.ÂÂ  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307,
318Â19 (1979)).Â  We are not required to
determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we
must presume that the trier of fact resolved any such conflict in favor of the
prosecution, and we must defer to that resolution.Â  State
v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).Â  In conducting a factual sufficiency review,
we consider the evidence in a neutral light.Â 
Watson v. State, 204 S.W.3d
404, 414Â15 (Tex. Crim. App. 2006).Â  We
may find evidence factually insufficient in two ways:Â  (1) the evidence supporting the conviction is
Âtoo weakÂ to support the fact-finderÂs verdict, or (2) considering the
conflicting evidence, the fact-finderÂs verdict is against the great weight and
preponderance of the evidence.Â  Laster, 275 S.W.3d at 518.Â  In so doing, we may only find the evidence
insufficient when necessary to prevent manifest injustice.Â  Id. Â Both legal and factual sufficiency are
measured by the elements of the offense as defined by a hypothetically correct
jury charge.Â  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State, 273 S.W.3d
273, 280 (Tex. Crim. App. 2008). 

Â Â Â Â Â Â Â Â Â Â Â  In Â LivelyÂs Â case, Â the
Â State Â had Â to Â prove Â that
Â (1) Â Lively; Â (2)Â 
committed theft of property; (3) intended to obtain or maintain control
over that property; (4) intentionally or knowingly threatened or placed Bryant
in fear of imminent bodily injury or death; (5) while exhibiting or using a
deadly weapon (here, a firearm). Â Tex. Penal Code Ann. Â§Â§ 29.02, 29.03
(Vernon 2003).Â  
Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  Analysis 

Â Â Â Â Â Â Â Â Â Â Â  LivelyÂs
appellate challenge to the sufficiency of the evidence focuses solely on
identity and does not challenge the remaining elements. 

Â Â Â Â Â Â Â Â Â Â Â  At trial,
all of the facts above were relayed to the jury.Â  Specifically, Bryant testified to the
robberÂs description and told the jury he was driving a dark colored SUV.Â  Bryant identified Lively in court and said
she was certain he was the person who robbed her at the J&J Fastop.Â  She identified him Âfrom the nose up and the
side of his hair,Â by the top of his cheekbones, and Â[b]ecause as far as his
ears goes, one sits higher than the other.ÂÂ 


Â Â Â Â Â Â Â Â Â Â Â  Randell
testified the pictures taken by Boswell matched the vehicle and description of
the robber at the J&J Fastop.Â  He
told the jury that he believed the gun found at Wal-Mart was the same as the
gun used in the robbery.Â  The jury viewed
the videos of the robbery, admitted without objection, and was able to compare
them to the pictures of evidence recovered by Boswell during the Wal-Mart
accident.Â  Â Â 

Â Â Â Â Â Â Â Â Â Â Â  We conclude this evidence was
legally sufficient to allow the jury, who was free to resolve conflicts in the
testimony and evidence, to determine whether Lively was the person who robbed
the J&J Fastop.Â  

Â Â Â Â Â Â Â Â Â Â Â  In
addressing factual sufficiency, Lively points out that the robber was wearing a
bandana covering his face, that Bryant was looking at the gun in the robberÂs
hands, and that Bryant may have said initially that the robber was driving a
two-tone brown and white Suburban, and misidentified the color of the gun as
black instead of blue steel.Â  Lively also
complains that BryantÂs in-court identification, which was not objected to at
trial, was tainted by her attending another robbery trial in which Lively was
the defendant and that BryantÂs identification of the getaway vehicle as a dark
Tahoe after viewing the surveillance videos was based on circumstantial
proof.Â  Examining the contrary evidence in
a neutral light, we cannot conclude the proof of LivelyÂs guilt was obviously
weak as to undermine confidence in the verdict.Â 
Â Â 

Â Â Â Â Â Â Â Â Â Â Â  We conclude
the evidence was both legally and factually sufficient to support the juryÂs
verdict that Lively was the person who committed aggravated robbery at the
J&J Fastop.Â  LivelyÂs sufficiency
points of error are overruled.Â  

III.Â Â Â Â Â Â  The Trial Court Did Not
Err in Denying the Motion to Suppress 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Next, LivelyÂs counsel moved to suppress the pictures and evidence found in the
Wal-Mart parking lot.Â  He argues that the
trial court erred in determining Lively gave his consent to search the
Tahoe.Â  

Â Â Â Â Â Â Â Â Â Â Â  The
trial courtÂs decision to deny LivelyÂs motion to suppress will be reviewed for
abuse of discretion.Â  Oles v. State,
993 S.W.2d 103, 106 (Tex. Crim. App. 1999); Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App. 1996); Maysonet v. State, 91 S.W.3d
365, 369 (Tex. App.ÂTexarkana 2002, pet. refÂd).Â  This particular review of the motion to
suppress only involves the fact question of whether Lively gave consent to
search.Â  Because the trial court is the
exclusive trier of fact and judge of witness credibility at a suppression
hearing, we afford almost total deference to its determination of facts
supported by the record.Â  State v.
Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Carmouche v. State,
10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).Â  Since all
evidence is viewed in the light most favorable to the trial courtÂs ruling, we
are obligated to uphold it if that ruling was supported by the record and was
correct under any theory of law applicable to the case.Â  Ross, 32 S.W.3d at 856; Carmouche,
10 S.W.3d at 327; State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App.
1999); Maysonet, 91 S.W.3d at 369.

Â Â Â Â Â Â Â Â Â Â Â  LivelyÂs consent to search the vehicle,
if otherwise voluntary, was effective to legalize the search of the Tahoe if
given within the scope of the accident traffic stop. Â See Florida v. Royer, 460 U.S. 491, 501
(1983).Â  In Texas, the State is required
to prove the voluntariness of consent by clear and convincing evidence based on
the totality of the circumstances. Â See Reasor v. State, 12 S.W.3d 813, 818
(Tex. Crim. App. 2000); Malone v. State,
163 S.W.3d 785, 800 (Tex. App.ÂTexarkana 2005, pet. refÂd). 

Â Â Â Â Â Â Â Â Â Â Â  Whether
consent was given freely and voluntarily is to be answered by looking at the
totality of the circumstances surrounding the consent. Â See Schneckloth v. Bustamonte, 412 U.S. 218,
226 (1973); Fancher v. State, 659
S.W.2d 836, 839 (Tex. Crim. App. 1983).Â  For
consent to be valid, the State must show by clear and convincing evidence that it
was not Âcoerced, by explicit or implicit means, by implied threat or covert
force.Â Â Schneckloth, 412 U.S. at 228; Allridge
v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991) (en banc). Â In determining whether consent was voluntary,
courts consider various factors, including whether the consenting person was in
custody, whether he or she was arrested at gunpoint, whether he or she had the
option of refusing consent, the constitutional advice given to the accused, the
length of detention, the repetitiveness of the questioning, and the use of
physical punishment. Â See Flores
v. State, 172 S.W.3d 742, 749 (Tex. App.ÂHouston [14th Dist.] 2005, no
pet.). Â The voluntariness of consent to search
does not require proof of the defendantÂs knowledge of a right to refuse the
search.Â  Schneckloth, 412
U.S. at 234. 

Â Â Â Â Â Â Â Â Â Â Â  During
the hearing on the motion to suppress, Lively was merely asked, ÂDid you give
consent for the search of your vehicle,Â to which he replied, ÂNo, I did
not.ÂÂ  Lively provided no other testimony
or explanation of the situation involving consent.Â  There was no testimony or argument in
LivelyÂs brief that he was in custody when Boswell asked for consent, was
arrested at gunpoint, was the subject of physical force, suffered a lengthy
detention, or was given any advice regarding consent.Â  

Â Â Â Â Â Â Â Â Â Â Â  The State chose not to cross-examine
Lively.Â  Instead, it introduced a
stipulation in which both parties agreed Lively had been previously convicted
of a crime of moral turpitude.Â  Next, the
State called Boswell, who testified that he asked for consent and Lively asked
why he needed it.Â  After Boswell
explained he wanted to search the Tahoe because of the way Lively was acting,
Lively said, Â[W]ell, if you feel like looking in there, look in there.Â[2]Â  

Â Â Â Â Â Â Â Â Â Â Â  The trial
court was the exclusive trier of fact and judge of witness credibility at the
suppression hearing.Â  It found Lively
consented to the search.Â  As the
fact-finder, the court was free to believe BoswellÂs testimony and disregard
LivelyÂs testimony.Â  Because the record
supports the trial courtÂs finding of consent, we afford the proper deference
to its determination and conclude that it did not abuse its discretion in
overruling LivelyÂs motion to suppress the evidence obtained as a result of the
accident investigation. Â Â Â Â Â Â  

IV.Â Â Â Â Â Â  The Trial Court Did Not Err in Admitting
Evidence from the Gun Barrel City Â Â Â Â Â Â Â Â Â  Arrest

Â 

Â Â Â Â Â Â Â Â Â Â Â  Lively contends the trial court
Âerred in admitting 404(b) evidence obtained during AppellantÂs Gun Barrel City
arrest to prove his identity as the suspectÂ[3]
in the J&J Fastop robbery.Â  A trial
courtÂs decision to admit or exclude evidence is reviewed only for abuse of
discretion. Â McDonald v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); Willover v. State, 70 S.W.3d 841, 845
(Tex. Crim. App. 2002). Â A trial court
does not abuse its discretion as the decision to admit evidence is within the Âzone
of reasonable disagreement.Â Â Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1990) (op. on rehÂg). Â We may not substitute our own decision for
that of the trial court.Â  Moses v. State, 105 S.W.3d 622, 627
(Tex. Crim. App. 2003). Â If the trial
courtÂs decision on the admission of evidence is supported by the record, there
is no abuse of discretion, and the trial court will not be reversed. Â Osbourn
v. State, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); Montgomery, 810 S.W.2d at 379.

Â Â Â Â Â Â Â Â Â Â Â  The general rule
is that all evidence having any tendency to make the existence of any fact that
is of consequence to the determination of the action more or less probable is
admissible. Â Tex. R. Evid. 401, 402.Â 
However, unless admitted Âfor other purposes, such as . . . identity,Â
evidence of other crimes, wrongs, or acts is not admissible Âto prove the
character of a person in order to show action in conformity therewith.ÂÂ  Tex.
R. Evid. 404(b).Â  ÂRule 404(b) is
a rule of inclusion rather than exclusion.ÂÂ 
De La Paz v. State, 279 S.W.3d
336, 343 (Tex. Crim. App. 2009).Â  The
rule only excludes evidence that is offered or will be used solely for the
purpose of proving bad character and hence conduct in conformity with that bad
character.Â  Id. at 343 (citing Rankin v.
State, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996) (Âif evidence (1) is
introduced for a purpose other Â than Â character Â conformity, Â (2) Â has
Â relevance Â to Â a Â Âfact Â of
Â consequenceÂ Â in the case and (3) remains free of any other
constitutional or statutory prohibitions, it is admissibleÂ)). 

Â Â Â Â Â Â Â Â Â Â Â  The
photographs of Lively, his Tahoe, and its contents were relevant.Â  Identity of the J&J Fastop robber was a
fact of consequence in the case, and the evidence obtained at Wal-Mart made the
determination of whether Lively was the robber more probable, a fact pointed
out by the State.Â  Contrary to LivelyÂs
contention, because the incident at Wal-Mart was not another robbery, the
photographs could not have been shown to the jury Âto prove the character of a
person in order to show action in conformity therewith.ÂÂ  In making its ruling, the trial court
understood that the Âphotographs . . . are not going to the other crime, itÂs
going to go to the things found at the scene of the accident.ÂÂ  We conclude the trial court did not journey
beyond the zone of reasonable disagreement in concluding Rule 404(b) did not
preclude inclusion of the photographs taken during the Wal-Mart accident and
arrest.[4]Â  

Â Â Â Â Â Â Â Â Â Â Â  During the
guilt/innocence phase, Boswell testified he heard reports while working the
accident that a blue Tahoe was used in a previous robbery nearby.Â  CounselÂs objection to admission of this type
of testimony was overruled.Â  On appeal,
Lively argues the trial court erred in allowing BoswellÂs testimony because it
constituted an inadmissible extraneous offense.Â 
We disagree.Â  

Â Â Â Â Â Â Â Â Â Â Â  Again,
evidence of other crimes, wrongs, or acts is not admissible Âto prove the
character of a person in order to show action in conformity therewith.ÂÂ  Tex. R. Evid. 404(b) (emphasis
added).Â  To constitute an extraneous
offense, the evidence must show a bad act or crime, and that the defendant was
connected to it. Â Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993) (quoting
Lockhart v. State, 847 S.W.2d 568,
573 (Tex. Crim. App. 1992)).Â  Where the
State does not tie the defendant to a previous act, it is not being used to
show Âthat personÂs actions in
conformity with such character.ÂÂ  Rodriguez v. State, 975 S.W.2d 667, 684
(Tex. App.ÂTexarkana 1998, pet. refÂd).Â  

Â Â Â Â Â Â Â Â Â Â Â  Rodriguez
was convicted of aggravated robbery for theft of a wallet accomplished by
threat of a handgun.Â  Id. at 671.Â  In that case, the arresting officer testified
the vehicle Rodriguez was in had been reported stolen, a fact which the officer
claimed Rodriguez later admitted.Â  Id. at 683.Â  This Court reasoned that because the
officerÂs statements were not specifically connected to Rodriguez, and nothing
in the evidence suggested he stole the car or knew the car was stolen before
his arrest, the officerÂs statements could not be interpreted as testimony of
any prior bad act by Rodriguez.Â  Id. at 684.Â  Thus, we ruled that Rule 404(b) did not apply
to bar the officerÂs testimony.Â  Id.Â 


Â Â Â Â Â Â Â Â Â Â Â  Here, the
State did not allege, and Boswell did not testify that it was LivelyÂs blue
Tahoe that was used in the previous robbery or that Lively had committed the
robbery.Â  As in Rodriguez, we conclude BoswellÂs testimony, which did not refer to
any prior bad act by Lively, was not barred by Rule 404(b) because it was not
being used to show action in conformity therewith.Â  

Â Â Â Â Â Â Â Â Â Â Â  These
points of error are overruled. 

Â 

V.Â Â Â Â Â Â Â  Ineffective Assistance of Counsel

Â 

Â Â Â Â Â Â Â Â Â Â Â  Allegations of ineffectiveness must be
firmly founded in the record.Â  Wallace
v. State, 75 S.W.3d 576, 589 (Tex. App.ÂTexarkana 2002), affÂd, 106 S.W.3d 103 (Tex. Crim.
App. 2003); Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999).Â 
Absent an opportunity for the attorney to explain the questioned
conduct, we will not find deficient performance unless the challenged conduct
was Âso outrageous that no competent attorney would have engaged in it.Â Â Goodspeed, 187 S.W.3d at 392; Fox
v. State, 175 S.W.3d 475, 486 (Tex. App.ÂTexarkana 2005, pet. refÂd).Â  For this reason, direct appeal is usually an
inadequate vehicle for raising such a claim because the record is generally
undeveloped. Â Thompson, 9 S.W.3d at 813Â14; Fox,
175 S.W.3d at 485.Â  

Â Â Â Â Â Â Â Â Â Â Â  We evaluate ineffective
assistance of counsel claims using the two-part Strickland test formulated by the United States Supreme Court,
which requires a showing of both deficient performance and prejudice.Â  Strickland
v. Washington, 466 U.S. 668, 687Â88 (1984); Thompson, 9 S.W.3d at 812; Fox,
175 S.W.3d at 485.Â  First, Lively must
show that his counselÂs representation fell below an objective standard of
reasonableness.Â  Fox, 175 S.W.3d at 485 (citing Tong
v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). Â There is a strong presumption that counselÂs
conduct fell within the wide range of reasonable professional assistance and
that the challenged action could be considered sound trial strategy.Â  Strickland, 466 U.S. at 689; Ex
parte White, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong, 25 S.W.3d at 712.Â  Therefore, we will not second-guess the
strategy of LivelyÂs counsel through hindsight.Â 
Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall
v. State, 161 S.W.3d
142, 152 (Tex. App.ÂTexarkana 2005, pet. refÂd).Â  Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  The second Strickland prong requires a showing that
the deficient performance prejudiced the defense to the degree that there is a
reasonable probability that, but for the attorneyÂs deficiency, the result of
the trial would have been different. Â Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712.Â  Failure to satisfy either prong of the Strickland
test is fatal.Â  ExÂ parte Martinez,
195 S.W.3d 713, 730 (Tex. Crim. App. 2006).Â 


Â Â Â Â Â Â Â Â Â Â Â  Before trial, Bryant was subpoenaed by a
court in Tyler, Texas, on another robbery case in which Lively was the
defendant.Â  Bryant did not testify in
that trial.Â  A motion in limine was
granted preventing the State from mentioning or alluding to any pretrial
identification.Â  The State told the court
it did not anticipate discussing any pretrial identification.Â  During cross-examination of Bryant, the
following exchange occurred:

Q.Â 
Now, you have never seen that man that took your money on June 26th of
2007, since that time; is that correct? 

Â 

A.Â 
Yes.Â  

Â 

Q.Â 
But after all this time -- and this is the very first time that youÂve
seen this man sitting right here in this courtroom right?

Â 

A.Â 
IÂve seen him one time.Â  ThatÂs
when I had to go to Tyler.Â  

Â 

Q.Â 
That was when?Â  

Â 

A.Â 
When I went to Tyler when he was brought over there.Â  

Â 

Q.Â 
You went to Tyler, Texas?Â  

Â 

A.Â 
ThatÂs -- 

Â 

Q.Â 
LetÂs talk about that.Â  

Â 

Counsel immediately asked to approach the bench and asked for
a hearing outside the presence of the jury.Â 
On appeal, Lively complains his counsel was ineffective because Âhe failed
to request a hearing outside the presence of the jury prior to opening the door
on cross-examination to testimony surrounding an impermissibly suggestive
pretrial identification by the victim.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  Although
Lively argues counselÂs questions Âinvited evidence of an impermissibly
suggestive pretrial identification,Â the trial court confirmed that counselÂs
questions did not open the door to any pretrial identification.Â  We agree with the trial court on this
matter.Â  BryantÂs nonresponsive answer to
the question of whether she had seen Lively Âin this courtroomÂ made no
reference to the Tyler court trial.Â  She
merely stated that she saw Lively in Tyler, Texas, and did not suggest that she
identified Lively as the robber at that time.Â 
In his brief, Lively did not expand on the need for a hearing outside
the juryÂs presence on this issue; counsel had already obtained a favorable
ruling on a motion in limine regarding pretrial identification testimony.Â  We find no ineffective assistance of counsel
in this matter. 

Â Â Â Â Â Â Â Â Â Â Â  Lively also
complains his counsel was ineffective in failing to object to the in-court
identification by Bryant, which was tainted by allegedly impermissibly
suggestive identification procedures in Tyler.Â 
Before trial, counsel stated to the court his Âposition . . . that a
pretrial identification procedure was impermissibly suggestive and tainted the
in-court identification procedure.ÂÂ 
After BryantÂs in-court identification, counsel objected and asked Âthe
Court to exclude her in-court identification of Carl Lively here in the court
today because it was tainted in an impermissibly suggestive way by the pretrial
identification procedures down in Tyler, Texas.ÂÂ  Trial counsel objected to the pretrial
identification as being tainted, obtained a hearing to develop the issue, and
obtained an adverse ruling by the trial court.Â 
The fact that the hearing and ruling by the court occurred after the in-court
identification by the witness did not preclude the trial judge from excluding
and striking the testimony had he agreed that the identification was
improper.Â  Contrary to LivelyÂs
assertion, we find that counsel sufficiently objected to the in-court
identification.

Â Â Â Â Â Â Â Â Â Â Â  Nevertheless,
counsel would not be considered ineffective in this case had he failed to
object to the in-court identification.Â 
An in-court identification is examined based on the totality of the
circumstances to determine if a Âsuggestive procedure gave rise to a
substantial likelihood of irreparable misidentification.ÂÂ  Wallace,
75 S.W.3d at 584.Â Â  Â 

Â Â Â Â Â Â Â Â Â Â Â  BryantÂs in-court
identification was admissible if it was based on her observations at the time
of the offense and was not affected by the pretrial procedures.Â  Neil v.
Biggers, 409 U.S. 188, 198Â99 (1972).Â 
We look to the opportunity of the witness to view the accused at the
time of the crime, the witnessÂ degree of attention, the accuracy of the
witnessÂ prior description of the accused, the level of certainty demonstrated
by the witness at the confrontation, and the length of time between the crime
and confrontation.Â  Wallace, 75 S.W.3d at 585 (citing Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998)).Â  

Â Â Â Â Â Â Â Â Â Â Â  Bryant said that her presence in the
Tyler courtroom did not have any effect on her in-court identification of
Lively.Â  The surveillance cameras
demonstrated that Bryant was close to Lively at the time of the robbery.Â  Although his face was covered by a bandana
and sunglasses, Bryant identified Lively based on characteristics such as his
hair color, eyebrows, top of his cheekbones, dissimilar ears, approximate age,
and height.Â  As to the degree of
attention, Bryant stated, ÂWhen somebodyÂs [sic] robs you at gunpoint and you
can see what you could see when they rob you, thatÂs something that does not go
away.ÂÂ  BryantÂs statements given to
Randell, which formed the basis of the police broadcast, and her written
statement to the police also demonstrated her degree of attention and accuracy
relating to LivelyÂs physical description.Â 
Although the length of time between the robbery and trial does not favor
admission of the in-court identification, Bryant reiterated her certainty
throughout trial that Lively was the person who robbed her.Â  She claimed Âif I wouldnÂt have been in Tyler
when he was there, I still would have recognized him from the sideburns and the
ears.Â  Some facial descriptions, you
donÂtÂtheyÂthey donÂt go away.ÂÂ  Based on
the totality of the circumstances, Bryant demonstrated her in-court
identification was independently reliable.Â 


Â Â Â Â Â Â Â Â Â Â Â  We overrule this last point of
error.Â  

Â 

VI. Â Â Â Â  Conclusion 

Â 

Â Â Â Â Â Â Â Â Â Â Â  We affirm
the judgment of the trial court.Â  

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  April
29, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  May
5, 2010

Â 

Do Not Publish

Â 

Â 

Â 

Â 











[1]Although
Officer StandfieldÂs report said, ÂBarbara, the lady who worked at the store,
told me he left in a two-tone, brown and white Suburban,Â Bryant denied
identifying the vehicle as anything other than a dark-colored SUV.Â  





[2]Lively
attempted to impeach Boswell by introducing a transcript of a prior proceeding
in a different county in which Boswell stated he asked Lively for consent
twice.Â  Boswell said his comment was taken
out of context, that he only asked for LivelyÂs consent once and that Lively
never refused consent.Â  

Â  





[3]Contrary
to LivelyÂs assertion that the trial court denied his motion in limine based on
Rule 404(b) with respect to the photographic evidence obtained at Wal-Mart, the
record demonstrates his motion in limine was granted.Â Â Â  





[4]Lively
argues that Rule 404(b) should have prevented Boswell from testifying he
received reports that a blue Tahoe was used in a robbery near his
location.Â  The only objection raised to
BoswellÂs statement, which did not mention that the other robbery involved
Lively or his Tahoe, was a hearsay objection.Â 
We need not address LivelyÂs unpreserved Rule 404(b) contention.Â